UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| STEPHEN HEDGER, et al., | ) | |
| --- | --- | --- |
| Plaintiffs, | ) | |
| v. | ) | 1:17-cv-00087-NT |
| BAR HARBOR TRUST SERVICES, | ) | |
| Defendant | ) | |

**DECISION AND ORDER ON
MOTION TO QUASH**

In this action, Plaintiffs Stephen, Matthew, Adam, and Douglas Hedger, and Sarah English, claim Defendant Bar Harbor Trust Services breached its legal obligations in its capacity as trustee of the Frank Hedger Trust and the Nathalie Hedger Trust. Plaintiffs assert claims of breach of trust (count I), breach of fiduciary duty (count II), negligence (count III), and accounting (count IV).

The matter is before the Court on the Joint Motion to Quash filed on behalf of Plaintiffs and their legal counsel in this case, Daniels, Porco and Lusardi, LLP, in connection with a subpoena Defendant served on Daniels, Porco and Lusardi, LLP. (Joint Motion to Quash, ECF No. 25.) In addition, the parties have raised a related issue regarding Plaintiff's response to Defendant's request for production of documents.

**Background**

Plaintiffs are the grandchildren of Frank and Nathalie Hedger, and the children of Robert Hedger. Frank and Nathalie Hedger each established a trust, which trusts included as beneficiaries their children and their grandchildren. (Complaint ¶¶ 30 – 37.) In 2001,

Defendant served as the trustee of both the Frank Hedger and Nathalie Hedger trusts. (*Id.* ¶¶ 38 – 40.)

Robert Hedger died on December 22, 2015, and his estate was probated in Florida. (*Id.* ¶ 29.) The Last Will and Testament of Robert A. Hedger named as its sole beneficiary the Robert Hedger Revocable Trust. Plaintiff Sarah English served as the personal representative of the Estate, and she is the trustee of the Robert Hedger Revocable Trust. Plaintiffs in this action are the sole beneficiaries of the Robert Hedger Revocable Trust.

In addition to its representation of Plaintiffs in this action, in the past, the New York law firm of Daniels, Porco and Lusardi (DPL) served as counsel to Robert Hedger. DPL also represented Sarah English, in her capacity as trustee of the Robert Hedger Revocable Trust, following Robert Hedger's death, when Sarah English also served as personal representative of the Estate of Robert Hedger.

Beginning approximately in August 2012 and ending approximately in August 2013, Robert Hedger retained DPL for purposes of an estate planning matter. (Affidavit of G. Brian Morgan, Esq. ¶ 4, ECF No. 25-1.) During its representation of Robert Hedger, DPL did not counsel Robert Hedger concerning the Frank and Nathalie Hedger Trusts. (*Id.* ¶ 6.) In connection with DPL's representation, on December 7, 2012, Attorney Morgan wrote to Joseph Pratt, then Defendant's Managing Director and Trust Officer. In his letter, Attorney Morgan requested information regarding Defendant's disbursement of trust funds to pay costs and expenses associated with Robert Hedger's home in Corea, Maine. (Defendant's Opposition, Ex. A, ECF No. 26-1.) In July 2013, DPL sent an invoice to Robert Hedger for services rendered. (*Id.*, Ex. C, ECF No. 26-3.) Robert Hedger

2

forwarded the DPL invoice to Defendant for payment, and Defendant paid the invoice with funds drawn against the Account of Frank H Hedger T/U/W FBO Robert A Hedger. (*Id.*; Affidavit of G. Brian Morgan ¶ 7, ECF No. 25-1.)

In August 2013, DPL, at the request of Robert Hedger, provided Defendant with a copy of Robert Hedger's power of attorney, which power of attorney designated Sarah English and Michael Sjostrom (Robert's brother) as Robert Hedger's agents. (Defendant's Opposition, Ex. D, ECF No. 26-4.)

In 2012, Robert Hedger authorized Sarah English to speak with his DPL attorneys about his estate planning matter. According to Ms. English, Robert English also later authorized his son, Stephen Hedger, to speak with DPL about the same matter, and she and her brother acted as agents for Robert Hedger and assisted in facilitating his communications with counsel regarding an estate planning matter. (Joint Reply, Statement of Sarah English, ECF No. 29-7.)

After Robert Hedger's death, DPL represented Sarah English in her capacity as trustee of the Robert Hedger Revocable Trust, which trust was the sole beneficiary of the Estate of Robert Hedger. (Plaintiffs' Joint Reply, Second Affidavit of G. Brian Morgan ¶¶ 1 – 2, ECF No. 29-6.) DPL did not probate the will. Instead, the Estate retained Florida counsel for that purpose. (*Id.* ¶ 3.) Nevertheless, on September 6, 2016, Attorney Morgan wrote to Defendant to learn "the amount currently in the account" and other details, and to obtain a statement of the account in order to process the Estate. In his letter, Attorney Morgan asserted that DPL represented the Estate, and he attached Letters of Administration from the Florida probate court and a statement from Sarah English confirming her

appointment as personal representative of the Estate. (Defendant's Opposition, Ex. E, ECF No. 26-5.) Attorney Morgan maintains that his assertion that DPL represented the Estate was made in error and, in fact, DPL represented Sarah English in her role as trustee of the Robert Hedger Revocable Trust, the sole beneficiary of the Last Will and Testament of Robert Hedger, and provided Ms. English with "trust administration assistance pertaining to the Revocable Trust." (Plaintiffs' Joint Reply, Second Affidavit of G. Brian Morgan ¶¶ 1, 5.)

In March 2017, Plaintiffs commenced this action and alleged that Defendant, in its role as the trustee of the Frank and Nathalie Hedger Trusts, failed to exercise proper fiduciary oversight and discretion concerning the expenditure of trust funds. In particular, Plaintiffs allege that Defendant made distributions to persons not related to Robert Hedger or Plaintiffs and for whom Robert Hedger and Plaintiffs had no obligation of support, failed to make distributions to Plaintiffs as contemplated by the terms of the trusts, failed to provide Plaintiffs with the statements regarding distributions from the trusts, and made distributions to Robert Hedger in excess of the amount needed for his education, comfortable support and maintenance. (Complaint ¶¶ 43 – 48, 51, 57 – 63, 77 – 83, 98 – 105.)

In November 2017, Defendant served DPL with a subpoena for production of documents. (ECF No. 25-3.) Through the subpoena, Defendant requests the following documents and records:

> 1. All documents and files ever created or maintained by [DPL] for legal services provided to Robert Hedger and/or the Estate of Robert Hedger.

4

> 2. All documents pertaining to work performed by [DPL] on behalf of Robert Hedger and/or the Estate of Robert Hedger, including without limitation, legal advice provided, legal analysis, correspondence, billing records, invoices, time sheets, legal memoranda and/or research, notes, estate planning documents, and the like.
>
> 3. All records pertaining to distributions requested from, or made by, the Frank Trust and/or the Nathalie Trust for services provided by [DPL] on behalf of Robert Hedger and/or the Estate of Robert Hedger.
>
> 4. All documents pertaining to the appointment of a Personal Representative ("PR")/Executor for the Estate of Robert Hedger.
>
> 5. All documents pertaining to the PR's performance of duties, including without limitation, any legal services provided by [DPL] to the PR and/or the Estate of Robert Hedger.
>
> 6. All records pertaining to letters of engagement, notices of conflict and/or conflict waivers with regard to the representation by [DPL] of Robert Hedger, the Estate of Robert Hedger, the PR, Stephen Hedger, Matthew Hedger, Adam Hedger, Douglas Hedger, and/or Sarah English.

Following service of the subpoena, Plaintiffs and DPL filed the Joint Motion to Quash. (ECF No. 25.) Upon review of Defendant's opposition to the motion (ECF No. 26) and Plaintiffs'/DPL's reply in support of the motion (ECF No. 29), the Court conducted a telephone conference to discuss the parties' respective positions. During the conference, the parties identified an additional issue regarding the adequacy of Plaintiffs' response to Defendant's request for production of documents. Citing the attorney-client privilege, Plaintiffs have withheld from production certain documents related to DPL's representation of Sarah English in her capacity as the trustee of the Robert Hedger Revocable Trust.

Plaintiffs and DPL later agreed to produce non-privileged documents despite their objection that the subpoena is overbroad and seeks irrelevant information. (Report of

5

Telephone Conference and Order, ECF No. 32.) As to the documents for which a privilege was asserted, the Court concluded that in camera review was warranted, and directed DPL and Plaintiffs to submit to the Court the documents responsive to (1) Defendant's subpoena request and (2) Defendant's second request for production of documents. (*Id.*) The Court has reviewed the documents.

## Discussion

Federal Rule of Evidence 501 defines, in the first instance, the application and scope of the attorney-client privilege. The Rule provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. As the Rule reflects, where state law applies to the claim or defense, as in this diversity action, the scope of the attorney-client privilege and any limitations on its reach are determined by state law.

Plaintiffs and DPL argue the Court must consider both New York law and Maine privilege law because New York has the most significant connection to the subject communications (DPL is a New York law firm and the representation it provided to Robert Hedger occurred in New York), whereas Maine law would otherwise govern the

6

admissibility of privileged communications in a Maine court. (Joint Motion to Quash at 9 – 10, citing Restatement (Second) of Conflict of Laws § 139.)

"A federal court sitting in diversity must apply the conflict of law rules of the state in which it sits, in this case Maine." *Walker v. Unum Life Ins. Co. of Am.*, 530 F. Supp. 2d 351, 353 (D. Me. 2008). In Maine, choice of law is decided by determining which state has the more significant contacts to the subject matter of the litigation, considering such factors as where the injury occurred, where the conduct giving rise to the action occurred, where the parties are located, and where the parties' relationship is centered. *State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 22, 995 A.2d 651, 660. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* (quoting Restatement (Second) Conflict of Laws § 145(2)). When the particular issue involves the attorney–client privilege, however, the Restatement focuses the inquiry on which state "has the most significant relationship with the communication." Restatement (Second) of Conflict of Laws § 139. If the law of state with the most significant relationship to the communication protects the communication against admission, as a general rule, the communication will be protected. *Id.* However, if the law of the state with the most significant relationship would not protect the communication, but the forum state's law would protect it, the communication ordinarily will not receive the protection of the forum state's law, "unless the admission of such evidence would be contrary to the strong public policy of the forum." *Id.*

## A. Subpoena Privilege Log

The DPL privilege log lists 217 documents consisting of communications between and/or among (1) DPL counsel, in particular Attorney Morgan, and Robert Hedger in connection with legal services; (2) Attorney Morgan, other attorneys and support staff within DPL, and outside attorneys retained or consulted to provide legal advice or services related to the estate planning services DPL provided to Robert Hedger; (3) communications between and/or among Attorney Morgan, Sarah English and Stephen Hedger, related to an estate planning matter involving their father, Robert Hedger; and (4) communications between Attorney Morgan and third parties unaffiliated with a legal practitioner. Defendant challenges the assertion of DPL and Plaintiff that communications between DPL and Sarah English and Stephen Hedger are within the attorney-client privilege.

Based on the subject matter of the communications, i.e., estate planning services provided by a New York firm on behalf of a grantor/settlor with divided residency between Florida and Maine, which services included the execution of a trust instrument in New York naming a New York trustee, the Court concludes New York is the state with the most significant relationship with the communications and that New York law would provide the rule of decision as to whether the communications are within the attorney-client privilege and whether the privilege was waived.

> New York law protects confidential communications made both "between [an] attorney or his or her employee and the client in the course of professional employment," N.Y. C.P.L.R. § 4503(a)(1), and "for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose," *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989) (internal quotation marks omitted) (quoting *In re Grand Jury Subpoena Served upon Bekins Record Storage Co.*, 62 N.Y.2d 324, 329, 476 N.Y.S.2d 806, 465

N.E.2d 345 (1984)). Thus, "[t]he attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship." *Ambac Assurance Corp. v. Countrywide Home Loans*, *Inc.*, 27 N.Y.3d 616, 623, 57 N.E.3d 30 (2016) (citing N.Y. C.P.L.R. § 4503(a)(1)).

*Windsor Sec.*, *LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 517 (S.D.N.Y. 2017).

"[C]ommunications made to counsel through ... one serving as an agent of ... [the] client to facilitate communication, generally will be privileged." *Stroh v. Gen. Motors Corp.*, 213 A.D.2d 267, 268 (N.Y. App. Div. 1995) (quoting *People v. Osorio*, 549 N.E.2d 1183, 1186 (N.Y. 1989)). The pertinent factors are "whether the client had a reasonable expectation of confidentiality under the circumstances," *Osorio*, 549 N.E.2d at 1186, and whether the third party communication "was necessary for the client to obtain informed legal advice." *Narayanan v. Sutherland Glob. Holdings Inc.*, 285 F. Supp. 3d 604, 611 (W.D.N.Y. 2018). To be necessary "the third party must be 'nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications.'" *Id.* (quoting *Allied Irish Banks v. Bank of Am.*, *N.A.*, 240 F. R. D. 96, 103 (S.D.N.Y. 2007)).

A number of the communications identified in the DPL privilege log are between counsel and Sarah English. Some were shared with or originated by Stephen Hedger. Sarah English asserts that she and her brother Stephen acted as agents of their father and facilitated his communications with counsel regarding an estate planning matter. (Joint Reply, Statement of Sarah English, ECF No. 29-7.)

The communications identified in the privilege log concern Robert Hedger's estate planning needs regarding certain real property located in Maine and Florida. The communications principally involve Sarah English. Significantly, in an email

communication to Sarah English in December 2012, Attorney Morgan asserts that he had Robert Hedger's permission to discuss the estate matter with Ms. English. Subsequent communications involving DPL and Sarah English convince the Court that Ms. English communicated frequently with counsel and her father regarding the estate planning matter. In fact, the communications suggest that Sarah English was DPL's principal contact person regarding the estate planning matter. Given Sarah English's significant role in her father's estate planning matter, which involvement was consistent with her designation as personal representative of the Estate of Robert Hedger and her role as trustee of the Robert Hedger Revocable Trust, which is the sole beneficiary of the Last Will and Testament of Robert Hedger, the Court is satisfied that Sarah English was acting as an agent for her father during her communications with DPL, and that her involvement "was necessary for [Robert Hedger] to obtain informed legal advice" regarding the estate planning matter. *Narayanan*, 285 F. Supp. 3d at 611. The communications exclusively between DPL and Sarah English, therefore, are within the attorney-client privilege.

The Court, however, is not persuaded that the communications involving Stephen Hedger are within the privilege. The record establishes that Sarah English is the person with whom DPL regularly communicated, and that Stephen Hedger's involvement was not necessary for Robert Hedger to obtain the legal services rendered by DPL. Accordingly, the communications to which Stephen Hedger was a party are not within the attorney-client privilege.

Based on the above findings and conclusions, the attorney-client privilege does not apply to the documents identified in the following entries in the privilege log: 3, 17, 22,

23, 35, 85, 91, 97. The privilege also does not apply to 109, counsel's communication with "the Villages," and to 157 and 162, counsel's communication with the "Paul Bunyon Road Association."

Plaintiffs and DPL also argue that any non-privileged documents are not relevant. (Joint Motion at 1.) Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Additionally, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* After an in camera review, although the documents do not necessarily relate directly to the trusts that are the subject of this action, because the information is to some degree probative of Robert Hedger's resources, the Court concludes that the documents in the following log entries are relevant: 3, 17[1], 22, 23, 35, 91[2], 97.

### B. Privilege Log For Request for Documents

Although the parties have not provided the Court with a copy of Defendant's requests for production of documents, upon an in camera review of the documents identified in the privilege log for Defendant's request, the disputed documents appear to be communications related to DPL's representation of Sarah English in her role as the trustee of the Robert Hedger Revocable Trust, and to services provided to Sarah Hedger by the Law Offices of Patrick Sullivan in connection with the probate of Robert Hedger's

---

[1] DPL can redact that portion of the document that concerns Stephen Hedger's request for advice regarding a personal matter as the information is not relevant to this proceeding.

[2] DPL can redact that portion of the document that concerns Stephen Hedger's request for advice regarding a personal matter as the information is not relevant to this proceeding.

estate in a Florida probate court. Under the circumstances, the Court is persuaded that Sarah English was a client of DPL and the Law Offices of Patrick Sullivan. The communications are thus within the attorney-client privilege.

## Conclusion

Based on the foregoing analysis and following the Court's in camera review, the Court grants in part and denies in part the Joint Motion to Quash. Specifically, the Court orders that Plaintiffs and DPL are not required to produce the documents identified in the privilege log for the subpoenaed documents except documents numbered 3, 17, 22, 23, 35, 91, and 97 in the subpoena privilege log. As to Defendant's requests for production of documents, the Court denies Defendant's request for an order compelling production of the documents that are subject of the privilege log.[3]

## NOTICE

Any objections to this Decision and Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 18th day of May, 2018.

---

[3] The privilege log identifies various communications. Review of the documents revealed that some of the communications include attachments of other documents, which independently would not be within the attorney-client privilege. This Decision and Order shall not be construed to determine whether the attached documents are within Defendant's requests or are otherwise discoverable.