UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHEN HEDGER, MATTHEW HEDGER, ADAM HEDGER, AND SARAH ENGLISH, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | 1:17-CV-00087-LEW |
| BAR HARBOR TRUST SERVICES, | ) ) ) | |
| Defendant | ) | |

## **MEMORANDUM OF DECISION AND ORDER**

Siblings Sarah English and Stephen, Matthew and Adam Hedger ("Plaintiffs") seek to hold Bar Harbor Trust Services ("Defendant") liable for acts and alleged omissions associated with Defendant's provision of trustee services to the Frank Howard Hedger Testamentary Trust ("Frank Trust") and the Nathalie C. Hedger Trust ("Nathalie Trust"). In other words, this is a civil suit about the management of trusts, and the merits of the litigation, therefore, turn entirely on state law. The matter returns to the active docket following the breakdown of settlement, and it returns with an assortment of new problems that have mushroomed into eleven motions for relief, including a motion to dismiss for lack of subject matter jurisdiction.

Here is the nub of the jurisdictional crisis. Plaintiffs commenced this litigation as a united front comprised of the trust settlors' grandchildren; none of the Plaintiffs live in Maine where Defendant is domiciled and Plaintiffs allege an amount in controversy in

excess of $75,000, so on the surface it seems the case is within this Court's original, diversity jurisdiction. Matters proceeded until, one day, it occurred to Defendant that perhaps Plaintiffs should have joined Plaintiffs' children in their complaint, because the Plaintiffs' children are necessary parties to the Frank Trust controversy. In part because of this concern, and, in part, because of new points of friction related to tax planning (someone forgot to account for a generation-skipping tax); Defendant's use of trust funds to pay its attorneys' fees and other complications (lead defense counsel also happens to be the brother of Defendant's trust manager) the settlement broke down. Defendant has filed a motion to dismiss and Plaintiffs have moved to amend their complaint to add new claims, to disqualify Defendant's counsel, and to join new parties, even as both Plaintiffs and Defendant propose enforcement of a settlement, albeit on different terms.

Remember the subject matter jurisdiction issue? Plaintiff Stephen Hedger went to join his pregnant wife and child, in their household in Germany, a few days after Plaintiffs filed their original complaint. This development raises the concern that Stephen Hedger was a stateless citizen for jurisdictional purposes as of the date of filing, a condition that would defeat diversity jurisdiction. But it is more complicated than that. According to the common law of trusts and certain civil procedure precepts, persons with remainder interests are necessary parties in a litigation over trust management, unless the absent "remaindermen" (what I will call remainder beneficiaries) are adequately represented by the trustee or have interests that will not be undermined by the litigation. The remainder beneficiaries here are the trust settlors' great-grandchildren, some of whom are adults and some of whom are minors. If they all join as party plaintiffs, the Plaintiffs think, then

perhaps there will still be diversity since the great-grandchildren are not domiciled in Maine.  However, as of the date of the filing of the complaint, one of Stephen Hedger's children was already living in Germany, where he was enrolled in school and living in the family home with his mother.  The joinder of that great-grandchild has the potential to defeat diversity jurisdiction because it reintroduces the stateless citizen problem, even if Stephen Hedger can demonstrate that his own domicile was in the District of Columbia when Plaintiffs filed the complaint.

The jurisdictional conundrum must be resolved.  If this Court lacks jurisdiction, it lacks the power to resolve the parties' dispute.  The purpose of this Order is to determine whether there is a way to salvage jurisdiction so that the parties are not required to take their dispute to state court after more than two years in this Court.

## BACKGROUND

### The Frank Trust

Article V of the Last Will and Testament of Frank Howard Hedger created a separate trust for each of the children of Frank and Nathalie Hedger, including Robert Hedger, father of Plaintiffs herein.  The parties call the trust established for the benefit of Robert Hedger the "Frank Trust," in reference to the trust's settlor, Frank Hedger. The Frank Trust provides its trustee the authority to "hold, administer, and distribute" income and principal, in the trustee's "sole and uncontrolled discretion."  Frank Trust Art. V § B.1 (ECF No. 154-1.)  Although the Frank Trust allowed for distributions to Robert Hedger's children in his lifetime, it required that the Trustee "consider first, and to the exclusion of the need of any

other beneficiary …, the needs of [Robert Hedger] on whose account the [trust] was created." *Id.*

Upon the death of Robert Hedger, the Plaintiffs (grandchildren of Frank and Nathalie through Robert) succeeded to *per stirpes* interests in the trust *res*, but the *res* is not distributable to Plaintiffs until the death of Robert Hedger's brother, Uncle John. *Id.* § B.2. If a plaintiff should predecease Uncle John, then the next generation through that plaintiff succeeds to that plaintiff's interest, subject to the same final distribution rule, *i.e.*, not before the death of Great-Uncle John. *Id.* §§ B.3, B.4. Because it is possible for a great-grandchild to be entitled to a distribution, the law of trusts says the grandchildren are "remaindermen." In other words, they are persons having "remainder" beneficial interests in the trust.

**The Nathalie Trust**

The "Nathalie Trust" is the product of a trust agreement. Article III of the Nathalie Trust provided for distribution of income to the grantor, Nathalie, during her lifetime. Pursuant to Article V, as amended, upon Nathalie's death each of her children, including Robert Hedger, succeeded to a *per stirpes* share in the portion of her trust's *res* that spilled over from Frank Hedger's will. As to those funds, Nathalie allowed for immediate distribution to two of her children upon her death, but she created a spendthrift trust for the benefit of Plaintiffs' father, Robert Hedger. Article VI of the Nathalie Trust refers to this trust as "Robert's Trust." Nathalie Trust Amended Art. VI (ECF No. 154-2, PageID # 1936).

Robert's Trust provides for the payment of all income and as much principal as required for Robert's "health, maintenance, and support." *Id.* § A. It also provides for the distribution of the *res* to Robert's descendants, *per stirpes*, on his death. *Id.* § B. Because Robert's children survived him and because they are all 25 or older, they are presently entitled to distribution of the *res*. In other words, as of the filing of the complaint, Plaintiffs' right to distribution vested, such that the Nathalie Trust controversy does not present the remainder beneficiary problem.

## The Gist of this Litigation

As alleged by Plaintiffs, Defendant succeeded to the office of trustee, for both trusts, in 2001, allegedly without the "necessary approvals" set forth in the trust instruments. According to Plaintiffs, during Robert Hedger's lifetime, Defendant authorized distributions to Robert in excess of what appropriate discretion or investigation would have warranted; failed to maintain adequate documentation related to distributions; failed to provide Plaintiffs with meaningful information about distributions; and, in the case of the Frank Trust, failed to make any distributions for the benefit of Plaintiffs during Robert Hedger's lifetime (among other alleged transgressions). Claiming Defendant unlawfully permitted the *res* to be depleted excessively and neglected to consider their needs during Robert's life, Plaintiffs seek to recover money damages from Defendant for maladministration of the trusts, under a variety of state law legal theories.

## The Motions

The matter is before the Court on eleven motions, listed in chronological order: Motion to Exclude Proposed Expert Testimony (ECF No. 88); Motion for Leave to Amend

the Complaint and for Return of Attorneys' Fees (ECF No. 128); Motion to Strike Jury Demand (ECF No. 142); Motion to Disqualify Defendant's Counsel (ECF No. 148); Amended Motion for Appointment of Special Fiduciary and other relief (ECF No. 155); Motion to Enforce Settlement Agreement (ECF No. 156); Motion to Stay (ECF No. 157); Motion for Limited Jurisdictional Discovery (ECF No. 158); Motion to Dismiss for Lack of Jurisdiction (ECF No. 160); Motion to Strike Plaintiffs' Counsel's Declaration (ECF No. 170); and Cross Motion for Order to Add Parties (ECF No. 175).

**DISCUSSION**

First things first. I must resolve the jurisdictional contest. Unless this Court has jurisdiction over the subject matter of the parties' dispute, I cannot resolve the parties' requests for substantive relief, *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005), including the request to enforce a purported settlement.[1] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994); *Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 797 F.3d 83, 86 (1st Cir. 2015).

Because this case does not present a federal question, subject matter jurisdiction depends entirely on diversity principles. Congress has accorded the District Courts of the United States original jurisdiction of "all civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States …." 28 U.S.C.A. § 1332(a). As used in the jurisdictional statute, to be a citizen of a state, a United States citizen must not only regard the state as

---

[1] A cause of action to enforce a settlement agreement is a contract claim governed by the same jurisdictional considerations discussed herein, although the accrual date for the claim is not the same as the claims in the underlying action.

6

his or her home state, but also must maintain his or her domicile in that state. *Hearts With Haiti, Inc. v. Kendrick*, 856 F.3d 1, 2 (1st Cir. 2017). When an American citizen takes up domicile in another country, the citizen is no longer considered a citizen of a state and, consequently, his or her presence in the action will destroy diversity jurisdiction because the action is no longer purely a matter between citizens of different states. *Id.*; *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 126 (1st Cir. 2011).

**A.     Jurisdiction Part I (The Nathalie Trust)**

Before settlement negotiations began in earnest, the Court directed the parties to address the matter of Stephen Hedger's domicile. That matter is now fully briefed after a period of focused discovery.[2] Based on the information disclosed in discovery, Defendant contends the "state" of Stephen Hedger's domicile, as of the filing of the complaint, was Germany, while Plaintiffs argue it was the District of Columbia.[3]

> "A person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning,'" *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3612, at 526 (2d ed. 1984)). Proving domicile requires two showings: (1) "physical presence in a place," and (2) "the intent to make that place one's home." *Valentin*, 254 F.3d at 366. Necessarily then, domicile and residence are not the same thing. After it is established, a domicile "persists until a new one is acquired." *Id.*

---

[2] The parties did not brief the matter before embarking on settlement discussions. See March 7, 2019 Procedural Order (ECF No. 94); Sealed Joint Statement of Fact Regarding Domicile (ECF No. 96); Stephen Hedger's Objections and Responses to Defendant's First Set of Special Interrogatories, and Additional Attachments re. Stephen Hedger's Domicile (ECF No. 101).

[3] The District of Columbia is considered a state for purposes of the diversity jurisdiction statute. 28 U.S.C. § 1332(e).

7

*Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016). Factors relevant to the determination of a citizen's domicile include: residence on the date an action commenced; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; and other considerations related to intent to abide in a location, such as the acquisition of a driver's license and the payment of taxes. *Id.* at 46. "No single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." *Id.* at 47.

Stephen Hedger owns residential real estate in D.C. that served as his family's residence for a few months beginning December 31, 2015. However, when Plaintiffs filed the complaint in this Court on March 10, 2017, neither Stephen Hedger nor any member of his family resided at that address. In February, 2016, Mr. Hedger's wife and son took up residence[4] in Germany, where his wife obtained employment with the United Nations and his son enrolled in school. Fully intending to join his family in Germany, Mr. Hedger leased out the family residence in D.C., in March of 2016, and entered into a short-term lease of space in a friend's D.C. home, all in preparation for his relocation to Germany. Also in 2016, Mr. Hedger secured the legal right to travel and remain in Germany, so long as his wife remained employed there, and he secured a German driver's license.

---

[4] That is, they moved into a residence and commenced living in Germany more than a year before Plaintiffs filed the complaint. Whether or not the German state confers "residency status" on them is beside the point.

In February of 2017, Mr. Hedger wrote to his landlord that he would be leaving to join his family in April.  While his wife and son resided in Germany, Mr. Hedger travelled to Germany on a recurring basis to be with them and attend to family matters there, including a change of family housing in Germany and vacation(s) in Europe.

On March 16, 2017, Mr. Hedger received orders to report to a unit of the US Army Reserve based in Germany, which means that he was engaged in communication concerning this change of status prior to that date, most likely before March 10, 2017.  On April 8, 2017, Mr. Hedger moved to join his family at their residence in Germany.  Within months, Mr. Hedger secured employment with a German company that had begun negotiating with him while he was in the United States, though evidently no firm offer existed before his arrival in Germany.  In December of 2017, a second son was born to the Hedgers in Germany.

Although Mr. Hedger still owns realty in the United States and maintains financial accounts based in the United States, his pay is deposited in a German bank account, he has registered for the payment of German taxes, and he has acquired a German driver's license.  Mr. Hedger and his wife intend to remain in Germany so long as she remains employed by the United Nations.  Nothing in the record supplied by Plaintiffs suggests that her tenure with that organization will not persist for the foreseeable future.

Mr. Hedger presumes that the family will one day return to the United States, but it is not apparent from the record that Mr. Hedger had the intention, in or around March 10, 2017, to maintain domiciliary status in the United States.  I, therefore, reject his contention that he is presently domiciled in the United States.  I also find that, as of March 10, 2017,

Stephen Hedger fully intended to establish his residency, on an indefinite basis, in Germany. Plaintiffs, in other words, have not persuaded me that Stephen Hedger intended to maintain his domicile in D.C., as of the date Plaintiffs filed this action. *Id.* at 46.

Nevertheless, Plaintiffs' burden is augmented by the rule that a party's domicile persists until it is changed. *Valentin*, 254 F.3d at 367. Thus, Plaintiffs may establish Stephen Hedger's status as a domiciliary of the District of Columbia by demonstrating that Stephen Hedger had not yet changed his domicile to Germany when Plaintiffs filed the complaint in this action. On that issue, I find it significant that Mr. Hedger maintained employment with the Department of Defense, with a duty station in Washington, D.C., from January 1, 2016, through April 5, 2017 (he tendered his resignation on March 13, 2017). Given that Mr. Hedger remained employed in D.C. and still resided in D.C. on March 10, 2017, I find it reasonable to conclude that, for jurisdictional purposes, he had not yet changed his domicile to Germany and was, *deshalb*, still a domiciliary of the District of Columbia.

Accordingly, at least for purposes of litigation concerning the Nathalie Trust, I conclude that this Court has subject matter jurisdiction because no Plaintiffs are a citizen of the same state as Defendant, and because Stephen Hedger was not yet domiciled in Germany when Plaintiffs commenced this action.[5]

---

[5] There is a line of authority that suggests, when it comes to the amount in controversy issue, the "pecuniary consequence" to each plaintiff must cross the jurisdictional threshold, *Thomson v. Gaskill*, 315 U.S. 442, 446 – 47 (1942), unless the plaintiffs together share a "common and undivided interest" in excess of the jurisdictional amount. *Pinel v. Pinel*, 240 U.S. 594, 596 (1916). Each plaintiffs' interest in the Nathalie Trust exceeded $75,000 on the date of filing, mooting any potential concern related to the amount in controversy.

**B.     Jurisdiction Part II (The Frank Trust)**

The Frank Trust presents a more difficult jurisdictional puzzle. Specifically, because Frank Hedger's great-grandchildren have remainder interests in the trust *res*, there is authority that indicates the great-grandchildren are "required" parties for purposes of Rule 19 and therefore need to be joined in the case, if their joinder can occur without introducing problems for the diversity jurisdiction analysis, and unless they are dispensable (i.e., not indispensable). Fed. R. Civ. P. 19. In other words, the joinder of an indispensable party can destroy the existence of diversity jurisdiction, but the mere identification of dispensable-but-interested parties will not defeat jurisdiction once obtained. *Cf. Cason v. Puerto Rico Elec. Power Auth.*, 770 F.3d 971, 976 – 77 (1st Cir. 2014).

> [T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether ... they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to them.

*Id.* at 977 (quoting *Horn v. Lockhart*, 84 U.S. 570, 579 (1873)). Rule 19 "provides for joinder of required parties when feasible and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable." *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013) (citation omitted). The Rule requires "pragmatic, practical judgments that are heavily influenced by the facts of each case." *Id.*

When these principles are applied in this case about trust administration, they must be squared with the "general rule" that "in suits respecting trust-property, brought either by or against the trustees, the cestuis que trust as well as the trustees are necessary parties." *Markham v. Fay*, 74 F.3d 1347, 1355 (1st Cir. 1996) (quoting *Carey v. Brown*, 92 U.S.

171, 172, (1875)).[6] "An exception to the general rule, however, exists when the trustee represents the beneficiaries' interests fully and without conflict." *Id.*

No party to this case has suggested that the trustee (Defendant) can represent the interests of the great-grandchildren "fully and without conflict." Nor does any party contend that the remainder interest of the great-grandchildren is in no way undermined by any of the remedies Plaintiffs pursue in this litigation. And although Plaintiffs think it would be neat to leave Defendant open to the possibility of redundant liabilities to members of the great-grandchild group, Defendant and the Court both have an interest in avoiding further litigation, and the great-grandchildren may be impaired in their ability to protect an interest if they are left out of this action. Indeed, it is not even possible on this record to rule out the possibility that Plaintiffs' claims concerning alleged "lost distributions" are based on needs associated with the care and upbringing of the great-grandchildren.

Given the Rule 19 problem, Defendant filed its Motion to Dismiss for Failure to Join Parties Under Rule 19 and Lack of Subject Matter Jurisdiction (ECF No. 160). In response, Plaintiffs both opposed the motion to dismiss (ECF No. 173)[7] and filed a Cross Motion for Order to Add Parties (ECF No. 175). The "fix" Plaintiffs propose in their cross motion to add parties takes the following form: all of the adult great-grandchildren except

---

[6] *See also Stevens v. Loomis*, 334 F.2d 775, 777–78 (1st Cir. 1964) ("Only incomplete and unsatisfactory relief could be afforded in a suit, the purpose of which was to charge the trustees to augment the corpus of the trust, in which but one income beneficiary was represented."); *Monsarrat v. Monsarrat*, 9 F. Supp. 374, 376–77 (D. Mass. 1934); *Green v. Green*, 218 F.2d 130, 136 – 39 (7th Cir. 1954).

[7] Plaintiffs state in their opposition to the motion to dismiss that they "are willing to concede that the Adult [great-grandchildren] are required parties under Rule 19(a)." ECF No. 173 at 6.

*(continued next page)*

one[8] will join the litigation proactively as party plaintiffs, in which capacity they will also serve as "virtual representatives" of those great-grandchildren who are minors. Evidently, existing Plaintiffs' counsel will then represent[9] every beneficiary, even though the law of trusts recognizes that their interests may be conflicting.[10]

The problem with Plaintiffs' fix is this: pursuant to the diversity jurisdiction statute, "the legal representative of an infant … shall be deemed to be a citizen only of the same State as the infant." 28 U.S.C. § 1332(c)(2). Stephen Hedger's oldest child was domiciled in Germany before Plaintiffs filed suit. Thus, the proposed "virtual representation" does not fix the problem, even if I accept that the great-grandchildren should join as party plaintiffs. When that great-grandchild is factored, by representation or otherwise, his domicile counts in the diversity analysis, and the stateless citizen rule defeats diversity jurisdiction.[11]

Based on the foregoing analysis, the controversy concerning the Frank Hedger testamentary trust is "broken" in terms of diversity jurisdiction. Moreover, even though the Court has diversity jurisdiction over the Nathalie Trust controversy, the Court cannot

---

[8] One great-grandchild supplied plaintiffs' counsel a Disclaimer (ECF No. 174-1), executed in the presence of witnesses, which states she disclaims any interest in the Frank Trust.

[9] Maine and Florida trust laws anticipate that minors may need to be represented by adults having a "substantially identical interest" in some scenarios. 18-B M.R.S. § 304; Fla. Stat. § 736.0304.

[10] The Plaintiffs also posit that I can enforce the settlement agreement in the manner they advocate (which would include a finding that Defendant engaged in an anticipatory breach), and thereby avoid any jurisdictional or Rule 19 problem, as though this Court's enforcement of a settlement agreement would not be subject to the same jurisdictional problems. (ECF No. 171). I am not persuaded. See, *supra*, footnote 1 and associated text.

[11] I am aware of the additional arguments raised by Plaintiffs that Stephen Hedger's wife and son *cannot* establish domicile in Germany as a matter of law. (ECF No. 173 at 14.) I do not find the arguments persuasive.

*(continued next page)*
13

exercise supplemental jurisdiction over the Frank Trust controversy because the supplemental jurisdiction statute does not allow it. *See* 28 U.S.C. § 1367(b); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 557 – 558 (2005). The Frank Trust controversy simply does not belong in this Court.[12]

**C.     Jurisdiction Part III (Purported Settlement Agreement)**

Finally, it has been proposed that the Court might evade the jurisdictional sockdolager by simply enforcing the parties' settlement agreement. The settlement agreement has its own jurisdictional problems. The accrual date of the breach of contract claim post-dates Stephen Hedger's establishment of domicile in Germany. Consequently, an action to enforce the agreement in federal court succumbs to the stateless citizen rule, even though that controversy is limited to the existing parties.

### *KÖNNEN SIE MIR HELFEN?*

This Court has subject matter jurisdiction over the Nathalie Trust controversy, but it lacks jurisdiction over the Frank Trust controversy. At this time, I will reserve judgment on the motion to dismiss the case, because it seems to me that Plaintiffs might move to amend the complaint to sever out and jettison the Frank Trust controversy, or they might prefer to take the entire controversy to state court. The parties might also wish to consider whether they want to pursue an action to enforce the settlement in state court, or perhaps

---

[12] Presumably this case does not also succumb to the "probate exception" to diversity jurisdiction, though it certainly makes one appreciate the sagacity of pursuing these kinds of claims in state court. *Weingarten v. Warren*, 753 F. Supp. 491, 494 – 95 (S.D.N.Y. 1990); *Barnes v. Brandrup*, 506 F. Supp. 396, 399 (S.D.N.Y. 1981).

return to the judicially-assisted settlement table to resolve this entire case without the need for further litigation.

## CONCLUSION

The Motion to Exclude Proposed Expert Testimony (ECF No. 88) is **RESERVED**; the Motion for Leave to Amend the Complaint and for Return of Attorneys' Fees (ECF No. 128) is **DENIED WITHOUT PREJUDICE** to a further motion; the Motion to Strike Jury Demand (ECF No. 142) is **RESERVED**; the Motion to Disqualify Defendant's Counsel (ECF No. 148) is **RESERVED**; the Amended Motion for Appointment of Special Fiduciary and other relief (ECF No. 155) is **RESERVED**; the Motion to Enforce Settlement Agreement (ECF No. 156) is **DENIED**; the Motion to Stay Proceedings Pending Ruling on Subject Matter Jurisdiction (ECF No. 157) is **DENIED**; the Motion for Limited Jurisdictional Discovery and for Leave to Supplement Motion to Dismiss (ECF No. 158) is **DENIED**; the Motion to Dismiss for Lack of Jurisdiction (ECF No. 160) is **RESERVED**; the Motion to Strike Plaintiffs' Counsel's Declaration (ECF No. 170) is **RESERVED**; and the Cross Motion for Order to Add Parties (ECF No. 175) is **DENIED**.[13]

**SO ORDERED.**

Dated this 10th day of February, 2020.

/S/ Lance E. Walker
**LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**

---

[13] The Cross Motion is denied as because it is inadequate to overcome the jurisdictional challenge to the Frank Trust controversy.